Good morning, and may it please the Court, Peter Pierce appearing on behalf of Appellant Shawn Neel. My goal is to reserve three minutes for rebuttal. The Court ordered the parties to be prepared to discuss the Sheehan case this morning, so I thought that would probably be a good place to start. So with the Court's indulgence, I'll start with the Sheehan case. Yeah, I guess the question specifically in my mind would be whether there's a reason in this case to defer our decision until the Supreme Court issues its opinion in Sheehan. Your Honor, we don't believe there is. We believe that considering Sheehan and the way it applied established legal principles that are well settled in the law, if those principles are applied to the facts here, the Court will see that Detective Neel reasonably believed that his life was in danger at the moment of the shooting. The Court in Sheehan determined that the officers in that case reasonably feared for their lives, and that the shooting was reasonable as a matter of law when viewed from the moment of the shooting. Here at the moment of the shooting, Detective Neel was confronted with a suspected armed robber, and the information that Detective Neel knew was that Mr. Collender had been accused of armed robbery earlier in the evening, and that he had threatened to kill the family of his victim. Detective Neel knew that at the time, that Mr. Collender suddenly reached down, and Detective Neel feared that Mr. Collender, accused of armed robbery, was reaching for a handgun. And so our position is that like the officers in the Sheehan case, Detective Neel's actions from the moment of the shooting, when viewed that way... But wasn't the decedent had his hands up, and Detective Neel charged toward him, and the decedent's hand goes down near his pants, and he shoots him, blows him away. It was one-fifth of a second. In the meantime, he has two squad cars on each end of the street that were on their way, and that's the one of the squad cars filmed it. Why isn't it a fact question for a jury to determine whether or not it was the justifiable use of force? Because Your Honor mentioned one-fifth of a second, Detective Neel had very little time to decide what to do. He had to make a split-second decision, and as far as he knew, he was confronting an armed robber who was suddenly reaching down for a weapon. And so our position is that as a matter of law, Detective Neel reasonably feared for his life. Well, is his subjective intent what is important here, or his subjective beliefs? No Your Honor, the standard is what would an objectively reasonable officer have done under the circumstances, and it's our position that any officer, knowing that he was confronting an armed robber who could possibly be armed because the robbery, after all, had occurred less than three hours earlier, knowing that that robber had threatened to go and kill the victim's family, and then suddenly the person suspected of robbery suddenly reaches down for something, it's reasonable any officer in that position would suspect that the suspect is reaching for a weapon. So there are basically three facts, if I understand your argument, there are three factors here. One is the crime of which he was suspected, including the surrounding threats. The second is the reasonable belief from that that he remains armed. And third is the gesture where he slightly leans over and reaches under his shirt, the very loose shirt that he was wearing. And basically, that's your case. I mean, that's the case on both sides, whether a reasonable officer would believe in those circumstances that the person was reaching for a weapon. Yes, Your Honor, those are the salient facts. If I might add one more fact, in the minutes prior to the shooting, Detective Neal testified that he saw Mr. Colander enter his car in the driveway, turn on the dome light, and reach into the back seat. So that is another factor to consider here. Mr. Colander could have been reaching for a gun. It's reasonable to conclude that he might have been reaching for a gun because he was suspected of armed robbery earlier in the evening. So that factor also figures into the calculus. So the question I have is that the officer used deadly force, he killed Colander. Yes, Your Honor. And isn't the question for the jury whether that degree of force was necessary under the circumstances in this excessive force case? I mean, could he have shot his arm? Could he have shot his leg? I mean, obviously, we've tried these cases. So we know what level, and I don't know what your policies are in that regard, what level of action justifies what level of force. Well, yes, Your Honor. If this court affirms the order of the district court and sends the case to the jury, which we hope it does not, that would be a question for the jury. Our position, though, is under the circumstances here, the use of deadly force was justified as a matter of law. Not that there's qualified immunity, which is slightly different and not as onerous a hundred percent justified. They only have to demonstrate that a reasonable officer in the circumstances would have believed that. Yes, Your Honor. And under saucier and its progeny, there's the reasonable mistake component here as well. We know that Mr. Colander was not armed at the time he was shot, but it's a reasonable mistake for a detective or an officer in the position of Detective Neal to conclude that he was armed at the time, and the qualified immunity analysis allows for that. The second part of Sheehan that I wanted to address today, the majority in Sheehan concluded that that case should go to a jury on a provocation theory because the officers in that case affected a second entry into Ms. Sheehan's room in her residential home without a warrant and by force. And the court recognized the well-established rule that if the conduct of the officer, the provocational conduct itself gives rise to an independent constitutional violation, then we can look to the conduct of the officers that occurred prior to the shooting. I would just point out to this court, the plaintiffs here have never alleged that anything Officer Neal did before the shoot, Detective Neal did before the shooting, itself constituted an independent constitutional violation. So our position would be, this court should not send the case back to the district court on a provocation theory. And I just wanted to make that clear since the court asked us to address the totality of the Sheehan case. Unless the court has any other questions... We reserve your remaining time. Thank you. May it please the court, my name is Paul Hoffman representing the Colander family. With me are Mr. Dale Gallipo and Catherine Sweetser. Let me start with Sheehan. I don't believe that Sheehan is relevant to the case. We do not make a pre-shooting negligence argument or pre-shooting. We don't argue that the pre-shooting conduct itself violated the constitution. As I understand, what's going up to the Supreme Court in Sheehan is primarily the ADA issues. It's not that. So I don't think there's any reason to hold it. The district court didn't make a decision based on that basis. I think we all operate within Billington. So I don't know. Our position is that the district court had this exactly right in terms of the disputed issues of material fact that prevent summary judgment in this case. Where are the disputed issues of fact? The decedent was suspected of armed robbery. That seems to be an undisputed fact. First of all... Let me just go through this with you. Is that an undisputed fact? It's an undisputed fact that Detective Neal was told that he was a suspect for armed robbery earlier in the day. It's undisputed. It's on the video that he leaned over and reached underneath his shirt in the area of his pocket or waistband immediately before the shooting. I think it's undisputed. The video shows what it shows. Our position is that reasonable people taking into account other things that lead up to that would view that... I don't see why anything else is even relevant. You have a suspect in an armed robbery. There's no reason that the officer knew of why he wouldn't still be armed a few hours later. He starts out with his hands up. If he kept his hands up, we wouldn't be here. That's a pretty terrifying gesture. Can I try to persuade you that that's not so? Persuade me there's an issue of fact. First of all, the question is whether, and I think it's been said before, it's not Detective Neal's subjective fear. That's right. What reasonable officer would not fire in that circumstance? We don't think any reasonable officer would fire in that situation. This court's cases would make it pretty clear that even when you have a gun, it's not necessary that you have the authorization to fire. Have and reach for are two different things. In Espinoza, this court said that officers confronting someone in an attic where they were shot, that's not enough. In Curnow, there was somebody who had a rifle on his lap. There are cases, the fact that even in a situation with a gun, it's not clearly established you can do it. I think it's very important to put it in context because it is about the totality of circumstances. It's not just about the instance shown in the video. The video has to be taken in context. The context is not just that there's a suspect for armed robbery. Obviously, he's a suspect. That doesn't mean that the allegations are true. It doesn't mean that any officer knows that they're true. No, but it means that a reasonable officer would react differently to the person who is a suspect in an armed robbery than they would a person who is a suspect in selling an ounce of marijuana to somebody. There's no doubt about that, but he also knows from Officer Salcido on the scene that Mr. Conner has no criminal history. He knows that when he comes out of the house that he's got no gun. When he sees the light go on, he could have been reaching for a Kleenex. He sees no gun at that point or at any point. There's a flashlight. This whole flashlight incident, he doesn't see a gun. He sees a flashlight. He knows the difference between a flashlight and a gun from his testimony in the record. At that point, Mr. Conner has made no threatening movements ever. He has never verbally or physically threatened the officer. He has not disobeyed a single command. There's a disputed fact about whether he was given commands and whether he disobeyed them. Doesn't our case law require a warning? And there's a dispute about warnings and whether it was feasible to give warnings. Instead of charging across after him, why doesn't he say, keep your hands up or I'll shoot? He doesn't say that. What he says is, get down, and in a fifth of a second he blows him away. Before he even waits for him to do anything, he blows him away. He's got his hands up and he's ready to surrender. I suggest to you that a reasonable jury could find that he might have been reaching for his wallet and that any reasonable officer would have done that. You've also got this officer as not a reasonable officer. I realize it's an objective test, but Officer Neal is somebody who's been diagnosed with panic and anxiety attacks which make him exceptionally fearful. He's testified that he had high anxiety when he was diagnosed. Do you agree that we have an objective standard here? Oh, I absolutely agree with that. Well, then why is that relevant? Well, it's relevant, first of all, to whether there are disputed facts and whether his perception, because he's the only officer, he's the only witness for certain parts of this. You've got an independent witness that says at no point that... But a disputed issue of fact has to be fact A versus fact B. It can't be, you shouldn't believe this guy because he's nervous. The question is, looking at the facts, all of them, as you pointed out, whether the objective standard is met or not. Isn't that it? Then you have to take all of the facts that I've just given you. Right, I understand that. You have to say that he didn't give any commands. But you don't have to take the fact about whether he has excitability or mental problems. In that case, you have to disregard everything that he said then, right? Because his testimony is inconsistent in many, many different... That's why I said that to me the key facts are still the crime of which the decedent was suspected and the gesture, which we don't have to rely on anybody's testimony. We can see it. And there's no case that I'm aware of, and they certainly haven't found a case, that says that if you're a suspected armed robber, armed robber, not any circumstances, no violence used, hours before, coming out of a house in a residential area, that as soon as you put your hand down, you can get blown away. There's no case that says that. No case. There's just no case. Wilkinson doesn't say that. Reese doesn't say that. Ontiveros doesn't say that. They've even gone to the Fifth Circuit to find cases and they can't find them. Those cases don't say that. In Reese the issue was he's told to keep his hands up. Repeatedly they say. And instead of keeping his hands up, he reaches to an area where the officer can't see and he gets blown away. But there's repeated commands to do that. It's not just because he puts his hand down. He's told exactly what to do and he doesn't do it. There's no disobedience here. If there's danger but no disobedience, what do we do? What does a reasonable officer do? A reasonable officer, he's got this huge gun, a gun that can shoot somebody at 500 yards. He's got it five yards away. He sees the guy's hands at all times. Would a reasonable officer just three hours before he's alleged to have been involved in some robbery in which he had a gun allegedly, do you have authorization to blow him away? Just because he puts his hand down for an instant? No, I don't think of a reasonable officer. My question I guess I have is was it reasonable for him to be charging at him with the gun? I mean, that's just, you know, we all watch the tape and I think unfortunately we all draw our individual conclusions from watching the tape, which might be why this should go to the jury. But the officer in terms of excessive force and the levels of what an officer do, he could have stood 20, was there evidence that Collender was running away from him? He could have been farther away from him and given him warnings and told him to freeze. He could have given him warnings at any point along the way there, any point along the way. And the testimony is that he didn't, that he didn't identify himself as a police officer. And if you look at the pictures of him, of Detective Neal at the time, you can't see the word police when you've got this big gun. What was he wearing? He was wearing a jeans and he was wearing a dark shirt that has a relatively small police on the front and a badge. But he's, when he's coming at, because Julian Collender is walking away. And one of the things, the physical evidence is inconsistent with some of Neal's story. Now I understand the district court... At the time of the shooting he wasn't walking away. On the video he's not walking away. Well no, initially on the video he has his back to Neal, walking away from his car, not Neal's car, which is inconsistent in some ways with what Neal says happened. And then something happens to make him turn around and he's got his hands up, right? And it's only then that he makes... And I would submit that with all these different facts, and there are really differences in the facts leading up to it, a reasonable officer taking the facts in the way, entirely our way, which is what this has to be, would not view that as a threatening gesture and would not shoot automatically. And this court's cases make that clear. This court's cases value the lives of people in Julian Collender's situation more than what they are arguing. What they are arguing is that if someone is accused of a crime that somehow has a gun involved in it, any movement you can kill them. And this is not something as a society that we're used to. And this court should not be the first one to say it. This court has interpreted the Garner line of cases as making it incumbent on police officers to have an objectively reasonable basis to kill somebody, particularly when they're five feet away from him with this incredible rifle in front of them. And I think that to go back to Neal's situation, I think that for certain parts of this Neal is the only witness. And if you go back to Gonzales in those cases and Scott and the whole line of cases this court has, this court doesn't have to accept what he says as being true for the parts that, you know, there's no conflicting evidence certainly. And there's a lot of reason not to. And we have evidence in the record about someone with his kind of disorder not having the right perception, not having the right memory. I think a reasonable jury could find, given this entire complex of facts, that what happened here is that Officer Neal was in the midst of a panic attack, not a reasonable officer, and then he shot him because he was just subjectively afraid in a way that a reasonable police officer wouldn't be. Detective Neal never should have been on the street that night. Under their policies he shouldn't have been on the street. Now that's not a claim, but he's not a reasonable police officer. There is no way you can look at anything he did that night and say that he was reasonable. So you've got to find a different measuring point. And that measuring point is that someone knowing all of these facts, knowing that he has no history of violence, no criminal record, that he's not seen any gun, he's seen no aggressive movement at all, that immediately puts his hands up, that you cannot use that kind of, you can't for certain kill somebody, which is what he had to know he was doing when he shot him at five feet away with that gun. You have to know that you're killing him, that you can't do that under this court's cases, you can't do it under the Constitution, and Judge Guilford was right. To have a jury in this community decide those questions, and decide the significance of that tape, and not to give Detective Neal this kind of immunity for that kind of decision. Thank you, Your Honor. Thank you. You have some rebuttal time remaining. In George v. Morris, decided by this court in 2013, this court observed that a single furtive movement or harrowing gesture can create an immediate threat justifying the use of deadly force depending on the circumstances. And that's at 736 F. 3rd at page 838. Based on the circumstances known to Detective Neal at the time of the shooting, Mr. Colander's furtive movement downward created an immediate threat. And any objective officer in that position would have concluded the same. Well is your position that any time an officer is threatened he can shoot somebody and kill them? No, Your Honor. Our position is under the specific facts of this case and the knowledge that Detective Neal had on that night, it was reasonable for him to use deadly force when Mr. Colander suddenly reached down. We are not asking this court to establish a rule that any time a suspect suddenly reaches down it's okay to use deadly force. That rule would just be untenable. So why not let a jury decide that? Because Your Honor, any reasonable officer in Detective Neal's position would have felt threatened and that is the inquiry for qualified immunity. And we believe this court can decide that as a matter of law based on the undisputed facts in the record. Well my view of it is Judge Guilford had it right that this is a fact question for the jury and he makes good arguments, you're making good arguments and when you have those kinds of disputes over facts then we have a body that will decide it. I suspected that might be Your Honor's view. I was trying to persuade Your Honor otherwise. I would like to address a couple of points, Judge Wardlaw, that you made that I think are important to address. Your Honor had mentioned that the Ninth Circuit cases require a warning. The Doralee case does say that but that is when a warning is practical or feasible. But that's another jury question to me because the snippet of video, I guess it was 30 seconds or something, but it shows the officers charging at him with this gun and I guess there's some evidence in the record that he said to him, freeze. Yes, Your Honor. Okay. Well why was he charging at him with that huge gun? Couldn't he have stood back and said put your arms up, police? I mean was it reasonable to be running up to this person and shooting them from five feet? Well Your Honor, Detective Neal's testimony is that he feared for his life because of all of the circumstances that occurred prior to the shooting. He didn't know if Mr. Colander was going to come after him because he might have thought he was coming for revenge based on the earlier robbery that night. He was going to the address where Mr. Colander lived with his parents. That is correct. He was going home basically. I mean I think a reasonable juror could conclude that. And if I may back up, Your Honor, the Billington case I think makes it fairly clear that the the reason for that is because that starts to seep into second-guessing what the officer did in violation of the grant. That's the problem with just looking at the snippet of the tape that we looked at. I mean I kind of saw it. Judge Graber thinks he was putting his hand under his shirt. I wasn't sure. It looked like he was maybe, he did go down, but maybe he was going back. But then as I start thinking about that I'm thinking, well, you know, isn't that a jury question? No, Your Honor, because our position, we know that the hand left the sight of Detective Neal. But you didn't say keep your hands up. I mean you didn't say raise your hands. Well, our position, Your Honor, is that there wasn't, from the time when Julian Colander suddenly reached down, as Judge Malloy observed earlier in the argument, there was just a for Detective Neal to make a decision. He didn't have time to say get your hands up. I mean, for all he knew, Your Honor, Mr. Colander could have been reaching for a weapon, and as soon as you reach for a weapon you can pull it out and shoot the detective in a split second. And so our position is there wasn't the time in the circumstances of this case. You could use, was there the time to use less than deadly force? No, Your Honor, because as far as Detective Neal knew, Mr. Colander was reaching for a weapon. It's reasonable to conclude that. That's the inquiry in which the court engages in qualified immunity, is would a reasonable officer in that position conclude that he needed to use deadly force because his life was in danger? And if you're pointing a gun at a robbery suspect who suddenly reaches down, it is reasonable as a matter of law to conclude that that suspect is going to come out firing and that he's reaching for a weapon based on the knowledge of the events that occurred earlier that evening. That's what we're saying here. I'm just curious, do you know which street it was in Yorba Linda? I don't remember the name of the street, Your Honor, I'm sorry. A couple of other points. My colleague, Mr. Hoffman, cited the Kurnow in the Espinoza case. In the Kurnow case, the suspect did not point a gun at the victim and the victim was not facing them when they shot him. That's a much different circumstance than what we're dealing with here. And in the Espinoza case, the officer shot an unarmed man who was hiding in an attic and they knew he had not been accused of any crime. And because he was cabined in the attic and hadn't been accused of any crime and the officers had forcibly entered the home, the court said qualified immunity shouldn't attach under those circumstances. And those circumstances, of course, are markedly different than the circumstances before the So the overarching point I would like to make is under the case law, the courts do not second guess the decisions of the officer from 20-20 hindsight. What they do is put themselves in the position of a reasonable officer under the circumstances confronting that officer. And it is our position that under the specific facts of this case, given that Detective Neal was facing a suspected armed robber who had threatened to kill the victim's family, and it was reasonable for Officer Neal to feel for his life at the time and to just discharge his weapon and use deadly force. Unless the court has any further questions, Detective Neal submits. I don't believe that we do. Thank you. Thank you. The case just started and is submitted and we appreciate very much the helpful arguments from both counsel.
judges: Molloy, Graber, Wardlaw